In re WEST SERVICE CORP., Debtor.

WEST SERVICE CORP., Plaintiff,

v.

William H. WILSON, Town of Suffield, Associated Water Services, Inc., Edward A. Moehringer, Sr., Defendants.

Bankruptcy No. 97–25290.
Adversary No. 98–2006.

United States Bankruptcy Court,
D. Connecticut.

Sept. 24, 1998.

Anthony S. Novak, Chorches & Novak, P.C., Wethersfield, CT, for Debtor–Plaintiff.

Bruce S. Beck, Beck & Eldergill, P.C., Manchester, CT, for William H. Wilson.

Robert S. Golden, Jr., Asst. Atty. General, State of Connecticut, New Britain, CT, for Connecticut Dept. of Public Utility Control.

*MEMORANDUM OF DECISION AND ORDERS AS TO COUNT ONE OF COMPLAINT GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

## I.

### *ISSUE*

At issue in this adversary proceeding is whether Connecticut statutes mandate the

prior approval of the Connecticut Department of Public Utility Control ("the DPUC") and/or the Connecticut Department of Public Health ("the DOPH") before a judgment creditor of a regulated Connecticut water company may record and file judgment liens against the real and personal property of the water company.

The parties agree that there are no genuine issues of material fact and each asserts entitlement to a judgment as a matter of law. The parties also agree that there is no Connecticut decisional law directly on point.

## II.

### BACKGROUND

The plaintiff, West Service Co. ("West"), the debtor in possession in this Chapter 11 case, owns and operates a water distribution service serving approximately 166 customers in Suffield, Connecticut. West, a Connecticut corporation, is a "water company" and a "public service company" under Connecticut statutes regulating such companies.

The defendant, William H. Wilson ("Wilson"), in April 1993, obtained a Connecticut state-court judgment in the amount of $650,000 against West and one Paul Hryniewicz. After the judgment was upheld after appeal, Wilson recorded a judgment lien in the Town Clerk's office in Suffield against West's real property, and filed a judgment lien in the office of the Secretary of State against West's personal property. These liens were

recorded and filed on October 6, 1995 and October 16, 1995, respectively. The real and personal property are used in and are necessary for the operations of West's water system. Wilson neither sought nor obtained approval from the DPUC or the DOPH prior to the recording and filing of the liens.

West, on December 11, 1997, filed a voluntary Chapter 11 petition in this court. On March 16, 1998, West commenced the instant adversary proceeding against Wilson seeking a ruling that Wilson's judgment liens, under Connecticut statutory law, are invalid.[1] After Wilson appeared, the court granted the request of the DPUC to intervene for the purpose of filing an amicus curiae brief.

Wilson, on April 2, 1998, filed his motion for a summary judgment that his liens are valid. The motion was accompanied by a statement of undisputed facts and a brief. The next day, April 3, 1998, West filed its motion, with appropriate accompanying papers, requesting a judgment that the liens are invalid and that Wilson's claim is wholly unsecured.[2] The DPUC filed its amicus brief on April 23, 1998 supporting, in general, West's position. Wilson filed a reply brief to the DPUC brief on May 28, 1998.

## III.

### CONTENTIONS

Section 52–380a[3] of the Connecticut General Statutes provides, in pertinent part, that "a judgment lien securing the unpaid amount of any money judgment, including interest

---

1. West, on March 16, 1998, filed an amended multi-count complaint in which the issue of the validity of the judgment liens is contained in Count One. This ruling applies only to Count One.

2. West's complaint and motion for summary judgment with its accompanying brief and other papers were filed on its behalf by its then attorney, James Colin Mulholland, Esq. Mulholland has since been succeeded as West's attorney by Anthony S. Novak, Esq.

3. Section 52–380a. *Judgment lien on real property*
(a) A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, containing:

(1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the money judgment and the amount due thereon; and (2) a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property. (b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment, provided the judgment lien certificate contains a clause referring to and identifying the attachment, substantially in the following form: "This lien is filed within four months after judgment in the action was rendered and relates back to an attachment of real property recorded

and costs, may be placed on any real property by recording in the town clerk's office ... a judgment lien certificate." Conn. Gen.Stat. § 52–380a. Similarly, with regard to personal property, section 52–355a [4] of the Connecticut General Statutes provides, in pertinent part, that by filing with the Secretary of State's office, a judgment lien may be placed on "any nonexempt personal property in which, by filing in the office of the Secretary of the State, a security interest could be perfected under title 42a [Uniform Commercial Code]." Conn. Gen.Stat. § 52–355a. Wilson contends that having complied with the applicable statutes, he holds valid liens against West's real and personal property.

West does not dispute Wilson's compliance with the judgment lien statutes, sections 52–380a and 52–355a, but contends that the operation of two public service company statutes, sections 16–43(a) [5] and

on (month) (day) (year), at Volume _____ Page _____ of the _____ land records."
(c) A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property. In the case of a consumer judgment, the complaint shall indicate whether, pursuant to an instalment payment order under subsection (b) of section 52–356d, the court has entered a stay of execution and, if such a stay was entered, shall allege any default on an instalment payment order which is a precondition to foreclosure. No action to foreclose a judgment lien filed pursuant to this section may be commenced unless an execution may issue pursuant to section 52–356a. The judgment lien shall expire twenty years after the judgment was rendered unless the party claiming the lien commences an action to foreclose it within that period of time and records a notice of lis pendens in evidence thereof on the land records of the town in which the real property is located.
Conn. Gen.Stat. Ann. § 52–380a ( West 1991).

**4.** Section 52–355a. *Judgment lien on personal property*

(a) Except in the case of a consumer judgment, a judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any nonexempt personal property in which, by a filing in the Office of the Secretary of the State, a security interest could be perfected under title 42a. The judgment lien shall be created by filing a judgment lien certificate in the office of the Secretary of the State. (b) The judgment lien certificate shall: (1) Be signed by the judgment creditor or his attorney or personal representative; (2) state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the money judgment and the amount due thereon; and (3) describe the personal property on which the lien is to be placed.
(c) Any such judgment lien shall be effective, in the same manner and to the same extent as a similar security interest under the provisions of title 42a, for five years from the date of filing, provided the filing shall not give the judgment creditor any right to take possession of the property on which the lien has been placed other than by writ of execution or other judicial process. The lien may be extended for additional five-year periods in the same manner as a financing statement may be extended but shall not be extended beyond the period of enforceability of the judgment. Any such property on which a lien has been placed may be executed against and levied on by the judgment creditor in the same manner as other personal property of the judgment debtor.
(d) A judgment lien certificate under this section shall be recorded and indexed in the same manner as financing statements filed with the office of the Secretary of the State pursuant to title 42a. On filing, the Secretary of the State shall provide information as to and copies of any such judgment lien certificate, or any release thereof, in the same manner that information and copies are provided with respect to a financing statement. The Secretary of the State shall charge the same fees for filing, for inspection of, for release of, and for information relating to or copies of, such a judgment lien certificate as are charged with respect to a financing statement and may destroy records of lapsed liens and of releases thereof in the same manner as if such judgment lien certificate was a financing statement.
Conn. Gen.Stat. Ann. § 52–355a ( West 1991).

**5.** Section 16–43(a) provides:

§ 16–43. *Merger or sale of public service companies. Issuance and approval of securities. Net proceeds from sale of water company land. Net proceeds from the sale of water company land for open space or recreational purposes*
(a) A public service company shall obtain the approval of the Department of Public Utility Control to directly or indirectly (1) merge, consolidate or make common stock with any other company, or (2) sell, lease, assign, mortgage, except by supplemental indenture in accord with the terms of a mortgage outstanding May 29, 1935, or otherwise dispose of any essential part of its franchise, plant equipment or other property necessary or useful in the performance of its duty to the public, provided (A) a public service company other than a water company may sell, lease, assign, mortgage or otherwise dispose of real

25–32(b)[6] of the Connecticut General Statutes, renders the liens void. The relevant portion of section 16–43(a) states that a "public service company shall obtain the approval of the Department of Public Utility Control to directly or indirectly ... sell, lease, assign, mortgage ... or otherwise dispose of any essential part of its franchise, plant equipment or other property necessary or useful in the performance of its duty to the public...." Conn. Gen.Stat. § 16–43(a). The corresponding portion of section 25–32(b) provides that "[n]o water company shall sell, lease, assign or otherwise dispose of˙ or change the use of any watershed lands ... without a written permit from the Commissioner of Health..." Conn. Gen.Stat. § 25–32(b). West argues that since Wilson did not obtain the prior approvals of the DPUC or the DOPH, the liens are void.

The DPUC, in addition to concurring with West's argument that Wilson's liens needed DPUC and DOPH approval to be validly perfected, proffers a public policy argument in its amicus brief: "Public policy demands that creditors are not allowed the same unfettered process to execute their liens against

property with an appraised value of fifty thousand dollars or less without such approval, and (B) a water company supplying water to more than five hundred consumers may sell, lease, assign, mortgage, or otherwise dispose of real property, other than public watershed or water supply lands, with an appraised value of fifty thousand dollars or less without such approval. The department shall not accept an application to sell watershed or water supply lands until the Commissioner of Public Health issues a permit pursuant to section 25–32. The condemnation by a state department, institution or agency of any land owned by a public service company shall be subject to the provisions of this subsection. On February 1, 1996, and annually thereafter, each public service company shall submit a report to the Department of Public Utility Control of all real property sold, leased, assigned, mortgaged, or otherwise disposed of without the approval of said department during the previous calendar year. Such report shall include for each transaction involving such property, without limitation, the appraised value of the real property, the actual value of the transaction and the accounting journal entry which recorded the transaction.
Conn. Gen.Stat. Ann. § 16–43(a) (West Supp. 1998)

**6.** Section 25–32(b) provides:

the debtor water company, with its captive and totally dependent customers...." (Amicus Brief at 4).

## IV.

### DISCUSSION

At the outset, it should be noted that the validity of a judgment lien, and the conditions under which it may be enforced in a foreclosure proceeding are separate and distinct issues. *Cf., e.g., Struzinski v. Struzinsky,* 133 Conn. 424, 429, 52 A.2d 2 (1947) ("The purpose of the statute authorizing judgment liens was to provide an additional method of appropriating in satisfaction of [the] judgment real estate which could by law be taken on ...execution. The lien merely constitutes a charge upon the property; and the filing of the lien does not affect the title or right of possession of the judgment debtor." (citations and internal quotation marks omitted))

The issue before this court is limited to the *validity* of Wilson's judgment liens on West's real and personal property. The court, therefore, need not reach the question of whether or to what extent a foreclosing court would impose any conditions on West's foreclosure rights because the property of a pub-

§ 25–32. *Department of Public Health jurisdiction re water and ice supplies. Powers and duties of commissioner re water company owned lands. Permits. Water treatment standards, tests and fees*

\*      \*      \*      \*      \*      \*

(b) No water company shall sell, lease, assign or otherwise dispose of or change the use of any watershed lands, except as provided in section 25–43c, without a written permit from the Commissioner of Public Health. Said commissioner shall not grant a permit for the sale, lease or assignment of class I land, except as provided in subsection (d), and shall not grant a permit for a change in use of class I land unless the applicant demonstrates that such change will not have a significant adverse impact upon the present and future purity and adequacy of the public drinking water supply and is consistent with any water supply plan filed and approved pursuant to section 25–32d. The commissioner may reclassify class I land only upon determination that such land no longer meets the criteria established by subsection (a) of section 25–37c because of abandonment of a water supply source or a physical change in the watershed boundary. ˙ Not more than fifteen days before filing an application for a permit under this section, the applicant shall provide notice of such intent, by certified mail, return receipt requested, to the chief executive officer and the chief elected official of each municipality in which the land is situated.

lic service company is involved. *Cf. Comm'n of Health Services v. Reynolds*, 1990 WL 261993 (Conn.Super.) (Superior court denies injunction requested by state Commissioner of Health Services to prohibit defendant town tax collector from foreclosing tax liens on property used by, but not owned by, water company.) The court notes that such foreclosure issues appear to be no different from those that arise when a permitted mortgagee forecloses.[7]

### A. JUDGMENT LIEN STATUTES

■■■ It is a fundamental policy of Connecticut law that the nonexempt property of a debtor be liable for the payment of judgment debts. *New Haven Trolley & Bus Employees Credit Union v. Hill*, 145 Conn. 332, 336, 142 A.2d 730 (1958) ("It is the fundamental policy of our law, and always has been, that all the property of a person, unless by law exempted, shall be liable for the payment of any money judgment rendered against him." (citations omitted)). The validity of a judgment lien depends on whether it has been perfected in accordance with the applicable provisions of state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law...The justifications for the application of state law are not limited to ownership interests; they apply with equal force to security interests."). In Connecticut, "the right to file a valid judgment lien is wholly a creature of the statute. The conditions precedent to

the validity of such a lien are all prescribed by statute. Conditions not so prescribed are not essential to the validity of the lien." *Hobbs v. Simmonds*, 61 Conn. 235, 235, 23 A. 962 (1891). Both parties acknowledge that Wilson's filings comply with the requirements of the judgment lien statutes, sections 52–380a and 52–355a. Consequently, unless there is a statutory provision prohibiting judgment liens on water company property or imposing additional prerequisites to perfection, the liens in question are valid.

Sections 52–380a and 52–355a contain no such prohibitions. Together, they permit judicial liens to be placed on any real or nonexempt personal property of any judgment debtor by filing the required certificates in the town clerk's office and in the office of the Secretary of the State.

Section 52–380b [8] of the Connecticut General Statutes provides that liens on any property, real as well as personal, of certain kinds of public service companies—namely, telephone, telegraph and electrical companies—may be perfected by filing the required lien certificate in the office of the Secretary of the State, rather than with the town clerk. The DPUC, in its amicus brief, points to the absence of water companies from this list as evidence that the legislature intended to prohibit judgment liens on water companies' property. This argument is unconvincing. Section 52–380b simply changes the location of the filing when the property of certain types of public service companies is involved.

---

Conn. Gen.Stat. Ann. § 25–32(b) (West Supp. 1998).

7. Section 52–380a(c) provides that a judgment lien may be foreclosed in the same manner as a mortgage on the same property. Conn. Gen. Stat. Ann. § 49–5 (West 1994) deals with mortgages on property of public service companies and makes the provisions of Conn. Gen.Stat. Ann. §§ 16–218 through 16–227 (West 1988), which deal with mortgages of railroad companies, applicable to public service companies. Sections 16–218 through 16–227 relate primarily to the rights and duties of a mortgagee-trustee representing bondholders or other creditors. Upon default, a creditor may bring a complaint in superior court to have the trustee placed in possession of the property, § 16–219. The trustee, when so appointed, operates the railroad for the benefit of the creditors, § 16–220, and may complete the foreclosure, including a foreclosure by sale, § 16–222.

8. Section 52–380b. *Judgment lien on certain public utility property*

Any property of any telegraph, telephone or electric light or power company, or association engaged in distributing electricity by wires or similar conductors, attached or liable to attachment under the provisions of section 52–287, may be subjected to a lien by any person holding the legal title to an unsatisfied judgment, whether by assignment or otherwise, against the company or association, provided the creditor shall file a certificate in writing in the Office of the Secretary of the State in the form provided in section 52–380a. If the lien is placed upon the property attached in the suit upon which the judgment was predicated and within four months after the judgment was rendered, it shall hold from the date of the attachment. Any such lien may be foreclosed or redeemed in the same manner as mortgages upon real property.
Conn. Gen.Stat. Ann. § 52–380b (West 1991).

The only significance in this proceeding of section 52–380b is that it gives explicit recognition to judgment liens against public service company property, and sets forth the procedure for perfecting them, without reference to any additional steps being required under section 16–43.

## B. *PUBLIC SERVICE COMPANY STATUTES*

■ West contends that the public service company statutes, sections 16–43 (applicable to all public service companies) and 25–32(b) (applicable to water companies), impose additional prerequisites to filing a valid judgment lien against a water company, requiring approvals from the DPUC and the DOPH before a lien may be perfected.[9] The plain language of section 16–43 contains no reference to judgment liens. It prohibits a public service company from selling, leasing, assigning, mortgaging or otherwise disposing of any of its property necessary or useful to its operations. This statute imposes restrictions on the public service companies, not on their creditors. It is the public service companies, not their creditors, who must obtain the necessary approvals before the public service companies may dispose of their property in any manner. Perfection of a judgment lien requires action only on the part of the creditor.

West argues that the same policy considerations that underlie the grant of broad regulatory powers over water companies to the DPUC and the DOPH—to ensure the safety of the public drinking water supply—necessitate construing the statute to require judgment creditors to have the approval of the DPUC and the DOPH. While policy considerations such as who may own or operate a water company may be relevant during a foreclosure action, they are irrelevant to the issue of whether a judgment lien is valid.

To support its contention that judgment liens are impliedly included in the scope of section 16–43, West relies on *In re Lake Hopatcong Water Corp.*, 15 B.R. 411 (Bankr. D.N.J.1981). This reliance is misplaced as

*Lake Hopatcong* does not deal with judgment liens and construes New Jersey statutes regulating public service companies which statutes are significantly different from those in Connecticut.

West and the DPUC claim that the DPUC's regulatory powers under sections 16–262*l* et seq. of the Connecticut General Statutes, including its right to force the sale of a financially troubled water company to another suitable operator, provide an alternative to foreclosure and adequately safeguard the interests of a judgment creditor. Conn. Gen.Stat. Ann. §§ 16–262*l* through 16–262q (West Supp.1998). Whether these provisions impose any restrictions or conditions on a secured creditor's foreclosure rights is an issue not reached in this proceeding. Nothing in these statutes imposes any restrictions on a judgment creditor's right to perfect its lien in order to establish the priority of its claim to the proceeds of any such undertaking, relative to the claims of the water company's other creditors.

West claims that prohibiting a judgment creditor from perfecting its lien without the prior approval of DPUC "is at worst a minor inconvenience which in no way prejudices any collection rights." (West Memorandum at 17). Yet, West acknowledges that the very act of requesting approval to place a large judgment lien on the assets of the water company would "most assuredly" trigger a review of the water company's economic viability under section 16–262n. *Id.* at 15. Denying a judgment creditor the right to perfect its lien prior to the DPUC forcing the liquidation of a failing water company relegates its claim to the same status as that of the water company's general unsecured creditors, denying the judgment creditor the protection which the legislature provided under sections 52–380a and 52–355a.

## V.

## CONCLUSION

Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R. Bankr.P.

---

**9.** The discussion of § 16–43 applies also to the corresponding arguments raised regarding § 25–32(b); the approval requirements of § 25–32(b) parallel those of § 16–43, but (1) apply only to water companies, not all public service compa-

nies; (2) do not include mortgages in the list of transactions requiring pre-approval; (3) affect only watershed lands, not all property; and (4) require the approval of the DOPH, rather than the DPUC.

7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." For the reasons herein stated, the court concludes that the judgment liens Wilson recorded and filed against West's real and personal property are valid, notwithstanding the lack of prior approval of such recording and filing by the DPUC and/or the DOPH.

The court concludes that there being no genuine issue of material fact and that Wilson, as to Count One of the complaint, is entitled to judgment as a matter of law and that West is not so entitled, the motion of Wilson for a summary judgment must be, and hereby is, granted, and the motion of West must be, and hereby is, denied. An appropriate judgment shall enter. It is

SO ORDERED.