[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO.107)
The plaintiff, People's Bank, filed a second amended complaint against the defendants, Eileen Squillante and Anthony Caio (the defendant) on May 28, 1997.[1] The plaintiff alleges that through a civil action brought in the judicial district of Stamford, it obtained a judgment against Squillante in the amount of $16,507.41 on April 1, 1991. To secure the judgment, the plaintiff recorded a judgment lien on Squillante's property located at 50 Old Road, Westport, Connecticut on December 30, 1996. The plaintiff alleges that it has priority over the potential claims of the other defendants.
On June 25, 1997, the plaintiff filed a motion for summary CT Page 10038 judgment, arguing that there is no disputed issue of material fact and that it is entitled to judgment as a matter of law. The defendant, who claims to have an interest in the property by virtue of a warranty deed dated January 16, 1997 from Squillante, filed a brief in opposition on July 9, 1997. Supplemental memoranda were filed by the plaintiff on August 12, 1997, and by the defendant on August 15, 1997.[2]
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Id. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381." (Citation omitted; internal quotation marks omitted.) Id., 805-06.
The plaintiff argues that when it recorded its judgment lien on 50 Old Road on December 30, 1996, Squillante was the record owner of the land and that the defendant, who purchased the property by warranty deed from Squillante, recorded it on January 16, 1997, after the plaintiff's interest was recorded.
The defendant argues that Squillante acquired interest in the subject property via quit claim deed from Chris Squillante, and that this interest was recorded on April 19, 1996. The defendant argues, however, that the April 19, 1996 quit claim deed was defective in that it was attested to by only one witness, and that a subsequently corrected quit claim deed was recorded on January 16, 1997, which then gave Squillante legal title to the property.[3]
Squillante then conveyed the property to the defendant via warranty deed on January 16, 1997. Therefore, the defendant argues, Squillante did not have legal title to the property when the plaintiff recorded its judgment lien on December 30, 1996, because the first quit claim deed was defective.
The plaintiff responds by arguing that any defect in the CT Page 10039 first quit claim deed was cured by the validating act enacted by the General Assembly under Special Act 1997, No. 97-6. The plaintiff argues that even if Special Act 97-6 does not cure the defect, the original defective quit claim deed created an attachable equitable interest in the subject property pursuant to General Statutes § 47-17. The plaintiff supports this argument by pointing out that the intention of the parties to convey the subject property to Squillante was manifested in the subsequent recording of the corrected deed. The defendant responds by arguing that the plaintiff is precluded from relying on Special Act 97-6, since this action was commenced before the act was signed into effect on April 18, 1997. The act was passed on April 18, 1997.
Special Act 97-6 states in pertinent part: "No deed . . . made for the purpose of conveying . . . any interest in real property in this state and recorded prior to the effective date of this act . . . shall be deemed invalid, because any such deed . . . [w]as attested by one witness only or by no witnesses . . . . No defects, omissions or irregularities enumerated in this act shall be validated if any action, suit or proceeding has been commenced, or notice of pendency thereof has been duly recorded on or before the effective date of this act. . . . This act shall take effect from its passage and shall apply to any defect, !omission or irregularity enumerated in this act which occurred on or before January 1, 1997."
Clearly, the plaintiff may not rely upon Special Act 97-6 to cure the original defective quit claim deed, because the plaintiff commenced this action on April 2, 1997, sixteen days before the effective date of the act, and therefore the act does not apply to the plaintiff's claim.
General Statutes § 47-17 states: "An unacknowledged deed, and any instrument intended as a conveyance of land, but which by reason of a formal defect operates only as a conveyance of an equitable interest in such land, and any contract for the conveyance of land, or of any interests therein, and any instrument by which an equitable interest in land is created, in which such land is particularly described, may be recorded in the records of the town in which such land is situated; and such record shall be notice to all the world of the equitable interest thus created."
In the instant case, the defective quit claim deed conveyed CT Page 10040 an equitable interest to Squillante in the subject property at the time the plaintiff recorded its judgment lien. "In conformity with the settled policy of this State, that all the property of a debtor should be holden for the payment of the debts of its owner, our courts have construed the language of [General Statute §52-380a] as rendering liable to attachment certain legal and equitable interests in property, the absolute or legal title to which property is not in the debtor, but which interest is within his control and can be fairly appraised or sold. . . ."Bachyrycz v. Gateway Bank, 30 Conn. App. 52, 55, 618 A.2d 1371
(1993). This includes "such other interests in goods or lands, whether legal or equitable, as, with justice to both debtor and creditor may, in the manner provided by statute, be appropriated to the payment of the former's debts." (Emphasis omitted.) Id.
In the present action, the court is unable to determine, without the addition of material facts, the question of whether the absolute or legal title was within the control of Squillante at the time People's filed its judgment lien. Consequently, plaintiff's motion for summary judgment is denied.
WEST, J.